UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

MELODY G.,                          )
                                    )
                    Plaintiff,      )
                                    )
            v.                      )        No. 1:22-cv-00389-JPH-MPB
                                    )
KILOLO KIJAKAZI,                    )
                                    )
                    Defendant.      )

**REPORT AND RECOMMENDATION ON
APPROPRIATE DISPOSITION OF THE ACTION**

Melody G. appeals the Social Security Administration ("SSA") denial of her petition for

Supplemental Security Income ("SSI"). United States District Judge James Patrick Hanlon

referred this matter to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket No.

13). For the reasons that follow, it is recommended that the Commissioner's decision denying

Melody G. benefits be **REVERSED and REMANDED**.

## I.    BACKGROUND

Melody G. applied for SSI on January 28, 2020, alleging disability beginning June 27,

2018. (Docket No. 7-2 at ECF p. 16). She alleged disability due to manic bipolar, PTSD,

personality disorder, lupus, and panic/depression. (Docket No. 7-8 at ECF p. 5). Her claim was

denied initially, on reconsideration, and on June 25, 2021, after a telephonic hearing before the

ALJ. (Docket No. 7-2 at ECF pp. 16-24). After the Appeals Council denied Melody G's request

for review (*Id.* at ECF p. 2), she filed the instant litigation.

In his decision, the ALJ followed the five-step sequential evaluation in 20 C.F.R. §

416.920(a) and concluded that Melody G. was not disabled. (Docket No. 7-2 at ECF pp. 16-24).

Specifically, the ALJ found that:

- At Step One, Melody G. had not engaged in substantial gainful activity since January 28, 2020, the application date (*Id.* at ECF p. 18).

- At Step Two, Melody G. had "the following severe impairments: lumbar spine degenerative disc disease status post discectomy, cervical spine sprain, borderline personality disorder, depression, bipolar disorder, post-traumatic stress disorder, and obesity[.]" (*Id.*)

- At Step Three, Melody G. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.* at ECF p. 19).

- After Step Three but before Step Four, Melody G. had the residual functional capacity ("RFC") "light work as defined in 20 CFR 416.967(b) except no requirement for more than occasional walking on slippery or uneven surfaces, and no more than occasional climbing of stairs or ramps. No climbing of ropes, ladders, or scaffolds, no work at unprotected heights or around unprotected dangerous moving equipment, and no more than occasional balancing (as defined in the SCO), stooping, kneeling, crouching, or crawling. The work should not require more than occasional concentrated exposure to fumes, gases, respiratory irritants, or extremes of temperature and humidity. The work should not require more than occasional interactions with the public, co-workers, or supervisors, and there should be no requirement for production rate pace and no more than occasional changes in work routine. (*Id.* at ECF p. 20).

- At Step Four, Melody G. was unable to perform any past relevant work. (*Id.* at ECF p. 23).

- At Step Five, considering Melody G.'s "age [38 years old as of application date], education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform" including cafeteria attendant, mail clerk, and officer helper. (*Id.* at ECF p. 24).

## II.    APPLICABLE LAW

"The Social Security Act authorizes payment of disability insurance benefits . . . to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts." *Id.* at 217. First, it requires an inability to engage in any substantial gainful activity. *Id.* And second, it requires a physical or mental impairment that explains the inability and "has lasted or can be expected to last . . . not less than 12 months." *Id.*

When an applicant seeks judicial review, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In evaluating the evidence, the Court gives the ALJ's subjective symptom analysis "considerable deference," overturning them only if they are "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 416.920(a)(4)(i)-(v), evaluating in sequence:

> (1) Whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2008). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and, if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(e), (g). The

burden of proof is on the claimant for Steps One through Four, but shifts to the Commissioner at Step Five. *See Clifford*, 227 F.3d at 868.

When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically appropriate. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

### III. ANALYSIS

Mary G. makes two arguments: (1) that the ALJ erred in formulating the RFC by impermissibly playing doctor; ignoring contradictory evidence; and failing to accommodate for moderate limitations in concentration, persistence, or pace and (2) that the ALJ erroneously dismissed the importance of her extremely limited activities of daily living and mischaracterized the evidence in the SSR 16-3p discussion. The Court addresses each argument in turn.

**A. Mental Residual Functional Capacity**

Melody G. argues that the ALJ erred in assessing her Residual Functional Capacity in a few ways related to his assessment of the medical opinions in the record. She argues that the ALJ did not give good reasons for discounting the consultative psychologist's and state agency psychologists' opinions and, instead, impermissibly played doctor. Additionally, she argues the ALJ failed to include the state-agency psychologists' moderate checkbox opinions and portions of their narratives within the RFC and the hypotheticals to the VE, including those related to moderate limitations in concentration, persistence, and maintaining pace.

The Commissioner contends that the ALJ reasonably evaluated Melody G.'s mental impairments and accounted for Melody G.'s "at-worst fair functional abilities." The Commissioner argues that the only indication Melody G. required any restrictions to account for

impaired concentration and pace was in the consultative exam, when Dr. Rini noted that her attention and concentration were below average, but that the ALJ correctly noted that Dr. Rini's opinion was not elaborated upon or supported. Further, the Commissioner contends the ALJ gave good reasons for departing from the state agency psychologists' opinions and that, at most, it was harmless error that the ALJ did not include a limitation to unskilled work in the RFC because the jobs the ALJ ultimately assigned at Step five were all unskilled.

ALJs must orient the VE to the totality of a claimant's limitations, including deficiencies in concentration, persistence, and pace. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). In *Vargas v. Colvin*, the court reversed the ALJ's decision because the ALJ did not address the claimant's moderate difficulties in regard to concentration, persistence, or pace in the hypothetical posed to the VE. 794 F.3d 809, 814 (7th Cir. 2015). There, the ALJ determined at steps two and three that the claimant had "moderate difficulties" with regard to concentration, persistence, or pace. *Id.* However, in the RFC determination, the ALJ concluded that the claimant could perform "light work" and was limited to "simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, involving only simple, work-related decisions." *Id.* at 812-13. The court noted that the "hypothetical posed to the VE must incorporate *all* of the claimant's limitations supported by the medical record—including moderate limitation in concentration, persistence, and pace." *Id.* at 814 (emphasis in original). Further, the court stated that limiting a claimant to "simple, routine, and repetitive tasks" is "unrelated" to the question of whether an individual with difficulties maintaining concentration, persistence, or pace can perform such work. *Id.* at 816. Therefore, the ALJ committed reversible error. *Id.* at 814.

In the present case, the ALJ concluded at Step three, that Melody G. "has [a] moderate[1] limitation" in concentrating, persisting, or maintaining pace. (Docket No. 7-2 at ECF p. 19). While the ALJ did not address the "B" criteria separately to explain the limitations he assigned to each, he commented generally that Melody G. reported an ability to remember, complete tasks, concentrate, understand, and following instructions, among other tasks. (*Id.*). He also cited Dr. Rini's consultative example where she "performed fairly well on the mental status exam tasks," and her medical records, which he indicated "do not show that the claimant was consistently observed to have significantly debilitating . . . concentration." (*Id.* at ECF p. 20). Finally, he noted her ability to concentrate fairly well at the hearing "without requiring consistent significant redirection." (*Id.*).

In assessing Melody G.'s RFC, the ALJ noted that her disability report indicated multiple conditions that limited her ability to work, including bipolar disorder and post-traumatic stress disorder, with worsening conditions noted in a later report. (Docket No. 7-2 at ECF p. 21 (citing Docket No. 7-8 at ECF pp. 5, 34)). The ALJ acknowledged Melody G. reported that her conditions affect many abilities, including concentration. (*Id.* (citing Docket No. 7-8 at ECF pp. 25, 48)). The ALJ recounted hearing testimony with symptoms that included manic phases with reduced sleep and impulsiveness, a few panic attacks per week, nightmares, and fatigue. (*Id.*). Next, the ALJ noted Melody G.'s treatment, which included medications and mental health therapy. (*Id.* at ECF p. 22). The ALJ recounted Melody G.'s activities of daily living, "including preparing meals, household chores, driving, managing finances, camping, going to concerts, and

---

[1] A "moderate limitation" means that a person's ability to function "independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. Pt. 404, Subpt. P. App'x 1, § 12.00F(2)(c) (May 14, 2021). However, in determining a claimant's RFC, "the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p.

shopping in stores, albeit with some limitations, such as reminders to take medication." (*Id.* citing (Docket No. 7-8 at ECF pp. 20-29; 43-52)). Finally, the ALJ noted that treatment notes from 2020 and 2021 indicate that Melody G. was the primary caregiver for her father, who was suffering from terminal cancer and alcoholism. (*Id.* citing (Docket No. 7-20 at ECF pp. 43, 45, 46; Docket No. 7-23 at ECF pp. 15, 24, 28)).

The ALJ found psychological consultative examiner, Dr. Rini's, opinion somewhat persuasive. Dr. Rini evaluated Melody G. on July 27, 2020. (Docket No. 7-20 at ECF p. 30). Dr. Rini opined that Melody G.'s functioning was in the normal range of intellectual ability, however standardized testing was not performed. (*Id.* at ECF p. 32). He further noted that "[a]ttention and concentration, is below average, while memory ability is average. Her social functioning is in the below average range." (*Id.*). The ALJ reasoned that the opinion was "somewhat vague but is generally consistent with, and supported by, the evidence discussed in this decision, including the findings from Dr. Rini's consultative exam and the claimant's presentation at the hearing." (Docket No. 7-2 at ECF p. 23). For example, the ALJ cited Melody G.'s ability "to provide information about her personal and medical histories and answer questions appropriately without any significant problems." (*Id.*).

The ALJ also found the state agency reviewing psychologists' opinions to be somewhat persuasive. The initial state agency psychologist, Dr. Lovko, reviewed Melody G.'s records on July 29, 2020. Under the "B" criteria of Listings 12.04, 12.08, and 12.15, Dr. Lovko opined that Melody G. had mild limitation in understanding, remembering, or applying information, moderate limitation in interacting with others; moderate limitation with regard to concentrating, persisting or maintaining pace; and mild limitation with adapting or managing oneself. (Docket No. 7-3 at ECF p. 37). With regards to the subsequent "checkbox" limitations, Dr. Lovko found

that Melody G. was moderately limited in six areas: (1) the ability to understand and remember detailed instructions; (2) the ability to carry out detailed instructions; (3) the ability to maintain attention and concentration for extended periods; (4) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) the ability to interact appropriately with the general public; and (6) the ability to respond appropriately to changes in the workplace. (*Id.* at ECF pp. 40-42). In the narrative section, Dr. Lovko elaborated:

> [T]he claimant is able to: understand, carry out and remember simple instructions; able to make judgments commensurate with functions of simple, repetitive tasks; able to respond appropriately to brief supervision and interactions with coworkers and work situations; able to deal with routing changes in a work setting.

(*Id.* at ECF p. 42). Dr. Clark reaffirmed on reconsideration on September 17, 2020. (*Id.* at ECF p. 59).

The ALJ noted that "brief," in the SAPs narrative, is "vague and undefined." (*Id.*). He found the opinions "somewhat consistent with, and supported by, the substantial evidence of record discussed in this decision, such as the findings from Dr. Rini's consultative exam and the claimant's presentation at the hearing, and such evidence does not support a simple tasks limitation." (*Id.*). He elaborated:

> For example, during the hearing, the claimant was able to provide information about her person and medical histories and answer questions appropriately without any significant problems, did not engage in any significant unusual behaviors or inappropriate interactions and was polite when addressing me (she was tearful at times but recovered fairly quickly), and maintained her concentration fairly well without requiring significant redirection.

(*Id.* at ECF pp. 22-23). It is evident that the ALJ was trying to explain that he found Melody G. less limited with respect to her concentration, persistence, and pace, limitations then the state-

agency psychologists, given her presentation at the hearing. However, putting aside the question as to whether the ALJ's reasons for discounting these medical opinions were supported by substantial evidence, the ALJ, himself still found Melody G. to be moderately limited with respect to concentration, persistence, or pace, yet, similar to *Varga*, he included no limitations in his RFC or his hypothetical to the VE to account for those limitations.

The vocational expert testified that if an individual were to be off task due to mental health exacerbations so much that they are off task at least 20% of the average workday that this would be work preclusive. (Docket No. 7-2 at ECF p. 51). Similarly, the VE testified that an individual's need to leave work suddenly, on a sporadic basis (at least three times per month), based on severe anxiety or triggering event, would be work preclusive. (*Id.* at ECF p. 50). Therefore, the VE acknowledged the risk of a claimant being off task and missing work but was not properly advised of this possibility by the ALJ in the hypothetical.

The Commissioner contends that even if the ALJ erred by not including the limitation to simple tasks, such error was harmless because all of the jobs identified by the vocational expert were unskilled. (Docket No. 12 at ECF p. 8 (citing Docket No. 7-2 at ECF p. 49)). However, the Seventh Circuit has repeatedly held that limiting plaintiffs to unskilled work does not adequately address limitations in concentration, persistence, or pace. *See O'Connor-Spinner*, 627 F.3d at 620 ("[E]mploying terms like simple, repetitive tasks on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence, and pace."); *see also Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2008) ("[L]imiting hypothetical to simple, routine tasks did not account for limitations of concentration, persistence, and pace. . . .").

Next, the Commissioner argues that the Seventh Circuit has affirmed variable rate or production rate provisions in RFC assessments to account for a moderate limitation in this broad functional area. (Docket No. 12 at ECF p. 7). But, the cases that the Commissioner relies on are distinguishable. In *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020), the court held that the ALJ's concentration persistence or pace limitations in the RFC were specifically tailored to the claimant without assuming that restricting her to unskilled work would account for her mental health impairments. The court illustrated this by highlighting the ALJ's reasoning for each of the limitations assigned specifically for concentration, then persistence, and then pace impairments. *See id.* ("Start with concentration. The second ALJ found that. . ." "Moving to persistence, . . ." "The ALJ incorporated pace-related limitations by stating that [claimant] needed flexibility and work requirements that were goal-oriented."). And, notably, the Seventh Circuit has found *Martin*'s limitation to "goal-oriented" as more reasonable than an exclusion from "production-pace." *See Paul v. Berryhill*, 760 Fed. Appx. 460 (7th Cir. 2019) ("[T]he ALJ's reference to 'flexible pace' is insufficient to account for Paul's difficulties maintaining focus and performing activities within a schedule, because the reference excludes only production-pace employment. Without more, the VE cannot determine whether someone with Paul's limitations could maintain the proposed pace or what the proposed pace even is.") (internal citation omitted).

In unpublished *Saunders v. Saul*, the ALJ gave "great weight" to the medical expert that testified at the hearing and, permissibly, relied on all but one[2] of that expert's limitations into the ultimate RFC and hypotheticals. 777 F. App'x 821, 824 (7th Cir. 2019).

---

[2] A limitation to object-based work, which the ALJ thought was accounted for by other limitations in the RFC.

And in unpublished *Dudley v. Berryhill*, the ALJ's RFC,[3] which included no work above an average or variable pace, was more restrictive than the state-agency psychologists opinions. 773 Fed. App'x 838, 842 (7th Cir. 2019). In other words, the Seventh Circuit did not create a bright line rule that variable rate or production rate provisions in RFC assessment account for a moderate limitation in concentration persistence or pace, but instead the court was satisfied, based on the ALJ's reasoning, that substantial evidence supported the limitations that the ALJs imposed to account for each of these claimant's specific impairments.

Moreover, the Seventh Circuit has "previously rejected similar formulations of a claimant's limitations because there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for include a moderate limitation on concentration, persistence, or pace." *DeCamp v. Berryhill*, 916 F.3d 671, 675-76 (7th Cir. 2019) (citing *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018)). Moreover, "no more than occasional changes in work routine" and social limitations "deals largely with workplace adaptation, rather than concentration, persistence, or pace. *See Varga*, 794 F.3d at 815.

In sum, the ALJ did not adequately address Melody G.'s moderate limitations maintaining concentration, persistence, or pace and Melody G.'s ability to stay on task. "The government bears the burden of proof at the fifth step and must present evidence establishing that the claimant possesses the residual functional capacity to perform work that exists in a

---

[3] Dudley's RFC and hypothetical to the VE identified these mental limitations: (1) limitation to simple, routine and repetitive tasks; (2) work involving no more than simple decision-making; (3) no more than occasional and minor changes in the work setting; (3) work requiring the exercise of only simple judgment; (4) tolerance of an average production pace, but not above average or variable pace; (5) preclusion from work involving direct public service, in person or over the phone; (6) tolerance for brief and superficial interaction with the public, which is incidental to job duties; (7) preclusion from work in crowded, hectic environments; (8) tolerance for brief and superficial interaction with supervisors and coworkers; and (9) no tandem task work. 773 Fed. App'x 838, 841.

significant quantity in the national economy." *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). The failure to build an "accurate and logical bridge" between the limitations maintaining concentration, persistence, or pace and the RFC assessment and the hypothetical posed to the VE requires this Court to remand for further proceedings.

With remand necessitated on that basis alone, the Court also comments on Melody G.'s argument that the ALJ impermissibly played doctor. The ALJ's conclusion is suspect because it is contradicted, to some degree, by, at least, the state agency psychologists, even though the ALJ found those opinions "somewhat persuasive." An ALJ cannot merely substitute his own medical judgment for that of an examining source or a reviewing source. *See Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009) ("The ALJ impermissibly 'played doctor' and reached his own independent medical conclusion."); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("[A]dministrative law judges . . . must be careful not to succumb to the temptation to play doctor."). Moreover, the reasons the ALJ gave for discounting the state-agency psychologists' opinions did not consider all of those psychologists' proposed limitations. For instance, the fact that she was able to "maintain[] her concentration fairly well without requiring consistent significant redirection" during her *telephonic* hearing,[4] which lasted thirty-seven minutes, did not explain how she was not "moderately limited" in her "ability to maintain attention and concentration for extended periods" and in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistence pace without an unreasonable number and length of rest periods." (Docket No. 7-3 at

---

[4] The transcript contradicts itself with respect to the hearing format. The introductory text of the hearing indicates that Melody G. "appeared in person," but the ALJ indicates on the record that "we're here today by telephone because of the coronavirus pandemic and that required the consent of the Claimant and, Counsel[.]" (Docket No. 7-2 at ECF p. 32). Counsel affirmed consent. (*Id.* at ECF p. 33).

ECF p. 41). *See DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("ALJ may rely on a narrative explanation, the ALJ still must adequately account for limitations identified elsewhere in the record, including specific questions raised in checkbox sections.").

On remand, the ALJ should fully account for Melody G.'s moderate limitations in concentration, persistence, or pace. The Court's remand should not be interpreted as expressing any views as to the merits of Melody G.'s claim for benefits, but only as an instruction to address all of her limitations.

**B. Subjective Symptom Analysis**

Second, Melody G. argues that the ALJ erroneously dismissed her testimony that her medication side effects include drowsiness and nausea and that the ALJ did not consider the qualified manner in which she completed her activities of daily living. The Commissioner contends that the ALJ's assessment was not patently wrong and that Melody G.'s arguments either are requesting that this Court reweigh the evidence or ignore the ALJ's actual discussion.

The regulations describe a two-step process for evaluating a plaintiff's subjective symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain"; and second, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). With regards to the second step, the ALJ should "carefully consider other evidence in the record" and the factors set forth in 20 C.F.R. § 416.929(c)(3). *Id.* These factors include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) the factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and

side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; and (5) treatment and measures, other than medication, an individual has received or taken for relief of pain or other symptoms. *Id.* The ALJ need discuss only the factors "pertinent to the evidence of record." SSR 16-3p, 2017 WL 5180304, at *8. An ALJ's credibility determination is not patently wrong if it cites to specific reasons in the record. *Burmester*, 920 F.3d at 510-511; *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018); *Alvarado v. Colvin*, 836 F.3d 744, 749 (7th Cir. 2016) (A credibility determination "tied to the evidence in the record" may not be disturbed as patently wrong.).

Here, the ALJ has adequately described his reasoning for finding Melody G.'s subjective symptoms to be less severe than she claims. First, the ALJ reasonably considered the effectiveness of Melody G.'s treatment regimen. 20 C.F.R. § 416.929(c)(3)(iv)-(v). Melody G. reported to her medical professionals that her medications were working well, and her providers observed her to be stable on medications. (Docket No. 7-23 at ECF pp. 40, 44). Melody G. did not complain of medication side effects to her providers, and specifically denied side effects at many appointments, which was inconsistent with her testimony that these medications made her "drowsy and dizzy." (Docket No. 7-2 at ECF p. 47; Docket No. 7-20 at ECF pp. 56, 59, 63). This conflict in the evidence was the responsibility of the ALJ, not the reviewing court. Thus, this request is an improper request to reweigh the evidence, and the Court declines to do so. *See Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) ("Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner.").

Second, the ALJ found Melody G.'s activities of daily living were inconsistent with the alleged severity of her impairments. *See* 20 C.F.R. § 416.929(c)(3)(i) (activities of daily living is

a factor considered in weighing subjective allegations). Melody G. indicated in her own function reports that she was able to prepare meals, do some household chores with assistance, drive, manage finances, and go shopping, camping, and to concerts. (Docket No. 7-2 at ECF p. 22, citing Docket No. 7-8 at ECF pp. 21-24, 44-47). She also reported to the consultative examiner Dr. Rini that she cooked about three times per week, did laundry daily, went grocery shopping, and liked to take drives. (Docket No. 7-20 at ECF p. 32). Melody G. also acted as the primary caregiver for her ailing father. (Docket No. 7-23 at ECF p. 19). The ALJ did not improperly equate these activities to the ability to perform full-time work, and thus his consideration of this factor was reasonable. *See Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021) ("In other words, the ALJ correctly looked at Plaintiff's daily activities to see if they corroborated her pain claims, and she found that they did not. She did not equate Plaintiff's activities to full-time work."). Moreover, the ALJ acknowledged that she did these activities, "albeit with some limitations" (Docket No. 7-2 at ECF p. 22). Recently, the Seventh Circuit upheld a decision in which the ALJ listed, among other things, the claimant's abilities to care for her two children and keep up with housework and cooking, as daily activities inconsistent with her allegations. *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022). Accordingly, the Court does not find error in the ALJ's evaluation of Melody G.'s subjective symptoms under SSR 16-3p. However, the Court notes that if, on remand, the ALJ's assessment of the weight to be given to the state agency psychologists' opinion changes, that may necessitate a new evaluate of Melody G.'s subjective symptoms as well.

## IV. CONCLUSION

For all these reasons, the Magistrate Judge recommends that the court **REVERSE and REMAND** the ALJ's opinion pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with this opinion.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO RECOMMENDED** the 23rd day of February, 2023.

Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.