UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MELODY G.,[1] | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) No. 1:22-cv-00389-JPH-MPB ) |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration, | ) ) ) ) |
| Defendant. | ) |

**ORDER OVERRULING OBJECTION AND ADOPTING
REPORT & RECOMMENDATION**

Plaintiff Melody G. sought judicial review of the Social Security Administration's decision denying her petition for supplemental security income. The Magistrate Judge recommended that the ALJ's opinion be reversed and remanded because the RFC determination was not supported by substantial evidence. The Commissioner objected to that recommendation. For the reasons below, the Commissioner's objection is **OVERRULED**, dkt. [17], and the Court **ADOPTS** the Magistrate Judge's report and recommendation, dkt. [15]. The ALJ's decision is **REVERSED and REMANDED** for further proceedings.

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

# I.
# Facts and Background[2]

Plaintiff applied for supplemental security income in January 2020 with an alleged onset date in June 2016. Dkt. 7-2 at 16. Plaintiff's application was initially denied on July 30, 2020, and denied upon reconsideration on September 17, 2020. *Id.* The ALJ held a telephonic hearing on October 13, 2020, and denied Plaintiff's claims on July 25, 2021. *Id.* at 13, 16. After the appeals council denied review, Plaintiff brought this action asking the Court to review the denial of benefits under 42 U.S.C. § 405(g). Dkt. 1.

In his decision, the ALJ followed the five-step sequential evaluation in 20 C.F.R. § 404.1520(a)(4) and concluded that Plaintiff was not disabled. Dkt. 7-2 at 12–24. Specifically, the ALJ found that:

- At Step One, Plaintiff had not engaged in substantial gainful activity since the application date. *Id.* at 18.

- At Step Two, she had "the following severe impairments: lumbar spine degenerative disc disease status post discectomy, cervical spine sprain, borderline personality disorder, depression, bipolar disorder, post-traumatic stress disorder, and obesity." *Id.*

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. *Id.* at 19.

- After Step Three but before Step Four, she had the RFC to perform "light work . . . except no requirement for more than occasional walking on slippery or uneven surfaces, and no more than occasional climbing of stairs or ramps. No climbing of ropes, ladders, or scaffolds, no work at unprotected heights or around unprotected dangerous moving equipment, and no more than occasional balancing (as defined in the SCO), stooping, kneeling, crouching, or crawling. The work should not

---

[2] The Court relies on the report and recommendation's factual background, dkt. 15 at 1–2, which the Commissioner did not object to, *see* dkt. 17.

    require more than occasional concentrated exposure to fumes, gases, respiratory irritants, or extremes of temperature and humidity. The work should not require more than occasional interactions with the public, co-workers, or supervisors, and there should be no requirement for production rate pace and no more than occasional changes in work routine." *Id.* at 20.

- At Step Four, Plaintiff "is unable to perform any past relevant work." *Id.* at 23.

- At Step Five, considering Plaintiff's "age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform" including cafeteria attendant, mail clerk, and officer helper. *Id.* at 24.

Magistrate Judge Brookman issued a report and recommendation, finding that the case should be reversed and remanded. Dkt. 15. The Commissioner objected to the unfavorable portion of the recommendation, dkt. 17; Plaintiff did not respond or object.

## II.
## Applicable Law

"The Federal Magistrate Act grants a district court judge the authority to refer a magistrate judge to conduct hearings and submit proposed findings of facts and recommendations." *Jackson v. United States*, 859 F.3d 495, 498 (7th Cir. 2017) (citing 28 U.S.C. § 636(b)(1)(B)). If a party objects to the recommendation, the "district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1).

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). When an applicant seeks judicial

review of a benefits denial, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)–(v), evaluating in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four." *Knight v. Chater,* 55 F.3d 309, 313 (7th Cir. 1995). After step three, but before step four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and, if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(e), (g).

If the ALJ committed no legal error and substantial evidence supports the ALJ's decision, the Court must affirm the benefit denial. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard

4

or is not supported by substantial evidence, a remand for further proceedings is typically appropriate. *See Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).

## III.
## Analysis

Plaintiff reported to the ALJ that her bipolar and post-traumatic stress disorders limited her ability to work. Dkt. 7-2 at 19. She noted that these issues make it hard for her to concentrate, carry on a conversation, focus, or understand things. *Id.* at 47; dkt. 7-8 at 25, 48. A clinical psychologist gave Plaintiff a series of mental tests and found that she had "below average" attention, concentration, and social functioning. Dkt. 7-20 at 32. Based largely on these facts, the ALJ determined at Step Three that Plaintiff had a moderate limitation with regard to "concentrating, persisting, or maintaining pace." Dkt. 7-2 at 19. The ALJ then found that she had the RFC to perform work that requires, in relevant part:

(1)　No more than occasional interactions with the public, coworkers, or supervisors;
(2)　No requirement for production-rate pace; and
(3)　No more than occasional changes in work routine.

*Id.* at 20.

The Magistrate Judge found that the ALJ included "no limitations in his RFC" that accounted for the finding that Plaintiff was "moderately limited with respect to concentration, persistence, or pace." Dkt. 15 at 9. He noted that the Seventh Circuit has "rejected similar formulations of a claimant's limitations" because there's no basis to suggest that eliminating jobs with limited workplace interactions, strict production quotas, or only occasional changes in

5

work routine is a proxy for accommodating limitations in concentration, persistence, or pace. *See id.* at 11 (citing *DeCamp v. Berryhill*, 916 F.3d 671, 675–76 (7th Cir. 2019); *Varga v. Colvin*, 794 F.3d 809, 815 (7th Cir. 2015)).

The Commissioner objects, insisting that these restrictions adequately account for Plaintiff's concentration, persistence, or pace limitations. Dkt. 17. She argues that the ALJ came up with his RFC primarily by appropriately relying on the recommendations of state-agency psychologists. *Id.* at 2, 4–5. The Commissioner further contends that the ALJ adequately addressed Plaintiff's limitations by even including a restriction beyond what the psychologists recommended. *Id.* at 2.

ALJs must consider—but are not required to adopt—the findings of state-agency psychologists. 20 C.F.R. § 404.1513a(b)(1). Some of these findings are noted in a form called the Mental Residual Functional Capacity Assessment, which has two relevant components: (1) a checkbox-type worksheet for the psychologist to assess the claimant's limitations and (2) a narrative section that contains a written assessment of the claimant's RFC. *See* Program Operations Manual System DI 25020.010(B)(1); *DeCamp*, 916 F.3d at 676.

The Commissioner says that the ALJ properly relied on this narrative section in formulating the RFC in this case, pointing to three Seventh Circuit cases. Dkt. 17 at 2, 4–5. In those cases, state-agency psychologists "adequately encapsulate[d] and translate[d]" their "checkbox" findings into a narrative RFC, so ALJs could rely on their recommendations. *See Pavlicek v.*

6

*Saul*, 994 F.3d 777, 783 (7th Cir. 2021) (affirming ALJ who relied on state-agency psychologist who translated finding that claimant had pace limitation to specific restriction); *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (finding no error when narrative testimony explicitly translated "checkbox" findings); *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019) (finding no error when ALJ relied solely on narrative testimony because there were no "checkbox" findings to contradict).

  The Commissioner's argument skips, however, that when a state-agency psychologist's narrative RFC is inconsistent with their "checkbox" findings, the ALJ must provide additional explanation before adopting it. *See, e.g.*, *DeCamp*, 916 F.3d at 675–76 (reversing district court because narrative explanation didn't explain differing limitations indicated by "checkbox" section); *Varga*, 794 F.3d at 816 (explaining "checkbox" limitations are "medical evidence which cannot just be ignored" and ALJ may only rely on a narrative explanation "where that narrative adequately encapsulates and translates those ["checkbox"] observations").

  Here, the state-agency psychologists determined in their "checkbox" section that Plaintiff was moderately limited in, among other things, (1) the ability to maintain attention and concentration for extended periods and (2) the ability to perform at a consistent pace without an unreasonable number and length of rest periods. Dkt. 7-3 at 41, 57–58. In the "narrative" portion of their opinions, they concluded that

> the totality of the evidence in file suggests that the claimant is able to: understand, carry out and remember simple instructions; able to make judgments commensurate with functions of simple, repetitive tasks; able to respond appropriately to brief supervision and interactions with coworkers and work situations; able to deal with routine changes in a work setting.

*Id.* at 42, 59.  In other words, after finding Plaintiff limited in her ability to concentrate and work apace, the doctors determined that she could still do work that had no more than simple tasks and instructions, had little interaction with others, and had minimal day-to-day changes.  *Id.* at 42, 59.

The Seventh Circuit has repeatedly said that the types of restrictions the state-agency psychologists imposed here do not adequately address concentration, persistence, or pace limitations like the ones in their narrative.  First, limiting a claimant to simple instructions and tasks "does not necessarily correlate with a claimant's ability to stay on task or perform at the speed required by a particular workplace," since "someone with problems concentrating may not be able to complete a task consistently over the course of a workday, no matter how simple it may be."  *Martin v. Saul*, 950 F.3d 369, 373–74 (7th Cir. 2020).  Second, limiting interactions with the public, coworkers or supervisors and minimizing day-to-day changes "deals largely with workplace adaptation, rather than concentration, pace or persistence."  *Varga*, 794 F.3d at 815.

For that reason, and because the stage-agency psychologists provided no explanation for why the restrictions they imposed were sufficient, their narrative RFC is inconsistent with their "checkbox" finding—*i.e.,* that Plaintiff

8

had concentration, persistence, and pace limitations. Said another way, the doctors did not address whether Plaintiff's concentration issues allow her to perform tasks—however simple, routine, and detached from others—over the course of a full workday. *See, e.g., Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019); *cf. Peeters v. Berryhill*, No. 18-CV-738, 2019 WL 2289632, at *6 (E.D. Wis. May 28, 2019), *aff'd sub nom. Peeters v. Saul*, 975 F.3d 639 (7th Cir. 2020) (finding ALJ could rely on state-agency doctors' conclusion that plaintiff "is able to sustain attention for simple, repetitive tasks . . . over the course of routine workday/workweek within acceptable attention, concentration, persistence and pace tolerances."). Since they didn't, the ALJ was required to do so before adopting their recommendations. *See DeCamp*, 916 F.3d at 675–76; *Varga*, 794 F.3d at 816; *cf. Pavlicek*, 994 F.3d at 783.

But the ALJ addressed only some of the state-agency psychologists' narrative recommendations. *See* dkt. 7-2 at 22–23. He found the "simple instructions" limitation was unsupported by the evidence, but he imposed the "brief supervision" limitation after a slight alteration to "not more than occasional interactions with . . . supervisors." *Id.* at 20, 22. The ALJ said nothing about the doctors' proposed "simple tasks" limitation and didn't impose it. *Id.* at 20, 22–23. He also didn't address the doctors' proposed limitations on work routine, but he did add that restriction in his RFC. *See id.*

Despite adopting two of the state-agency psychologists' recommendations—which restricted Plaintiff to occasional supervision and changes in work routine—the ALJ didn't say how imposing these restrictions

9

adequately account for Plaintiff's limitations, such as the checkbox portions of the doctors' recommendations. *See* dkt. 7-2 at 22–23; *DeCamp*, 916 F.3d at 676. Said differently, the ALJ did not say how these restrictions—which normally do not address concentration, persistence, or pace limitations—were sufficient in this case. *DeCamp*, 916 F.3d at 676. The failure to do so means the ALJ did not adequately account for limitations identified elsewhere in the record. *Id.*

The Commissioner insists that, even if that's the case, the ALJ sufficiently addressed Plaintiff's limitations by including a restriction beyond what the state-agency psychologists recommended—"no requirement for production-rate work." Dkt. 17 at 2. Generally, this restriction does not "serve as a proxy for including a moderate limitation on concentration, persistence, or pace." *DeCamp*, 916 F.3d at 676. But the Commissioner says that such a production-rate restriction can address concentration limitations when supported by the facts. Dkt. 17 at 6. If the ALJ believed that this case was different and this restriction addressed Plaintiff's limitations, he could have made that finding. *See Martin*, 950 F.3d at 374. But the RFC section has no analysis on why this restriction is enough to account for the moderate limitation that the ALJ also found. The failure to explain means the ALJ did not "build an accurate and logical bridge" between Plaintiff's limitations and why this restriction was appropriate. *See, e.g., Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

10

In sum, the state-agency psychologists did not adequately encapsulate and translate their "checkbox" findings—that Plaintiff had concentration, persistence, and pace limitations—into their narrative RFC recommendation. To adopt their recommendations, then, the ALJ needed to say why their proposed restrictions were sufficient in this case. Because he didn't do so, and since he provided no reasoning for why his additional production-rate pace restriction was sufficient, the Magistrate Judge was correct to find "the ALJ's RFC assessment" did not "incorporate all of the claimant's limitations supported by the medical record." *Yurt*, 758 F.3d at 857.

For the same reasons, this error is not harmless. The Commissioner argues that Plaintiff's limitations are accounted for in Step Five since it contained only "unskilled" jobs, which by definition involve only "simple duties." Dkt. 17 at 2–3. But that was insufficient. The Seventh Circuit has repeatedly held that limiting plaintiffs to unskilled work does not adequately address limitations in concentration, persistence, or pace that are supported by the medical evidence. *See, e.g., O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) ("The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity.").

Finally, the Commissioner contends that the Plaintiff has not identified any additional restrictions that would have accounted for her limitations. Dkt. 17 at 6; *see also* dkt. 12 at 6. But the cases the Commissioner cites say only that Plaintiff must point to record evidence that compels a finding that more restrictions may be necessary—not that the Plaintiff has to identify those

11

restrictions herself.  *See* dkt. 12 at 6 (citing *Lockett v. Saul*, 834 F. App'x 236, 239 (7th Cir. 2019); *Pytlewski v. Saul*, 791 F. App'x 611, 616 (7th Cir. 2019)). Here, Plaintiff has done so: she referred to the psychologists—and the ALJ himself—who found her moderately limited in concentration, persistence, and pace.  *See* dkt. 10 at 9, 19.

In sum, remand is required for Plaintiff's moderate limitations in concentration, persistence, and pace to be addressed by the ALJ in his RFC analysis.[3]

## IV.
## Conclusion

The Commissioner's objection to the Magistrate Judge's Report and Recommendation is **OVERRULED**, dkt. [17], and the Court **ADOPTS** the Report and Recommendation, dkt. [15].  The Court **REVERSES and REMANDS** the ALJ's decision.  Final judgment will issue by separate entry.

**SO ORDERED.**

Date: 3/31/2023

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All Electronically Registered Counsel

---

[3] Because this issue is dispositive, the Court does not need to address the objection to the portion of the Magistrate Judge's report and recommendation that commented about the ALJ potentially "playing doctor."  *See* dkt. 15 at 12–13.